**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| **UNITED STATES OF AMERICA** | ) | | |
| | ) | | |
| **v.** | ) | No. | **1:21-cr-69 (APM)** |
| | ) | | |
| **JORGE AARON RILEY** | ) | | |

**GOVERNMENT'S RESPONSE TO
DEFENDANT'S APPEAL OF ORDER OF DETENTION**

The United States respectfully files this memorandum in response to the defendant, Jorge Aaron Riley's Appeal of Order of Detention. A grand jury of this Court has found probable cause to return an indictment charging Riley with, inter alia, obstructing the U.S. Congress's certification of the results of the 2020 presidential election, in part by violently and unlawfully entering the United States Capitol on January 6, 2021. Riley's brazen statements and actions demonstrate that there are no conditions of release that would reasonably assure the safety of the community or Riley's compliance with Court orders.

**I.     Factual Background**

**A.  The Attack at the U.S. Capitol on January 6, 2021**

On January 6, 2021, thousands of rioters stormed the U.S. Capitol Building. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the U.S. Capitol. During the joint session, elected members of the United States House of Representatives

and the United States Senate were meeting in separate chambers of the U.S. Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Michael R. Pence was present and presiding, first in the joint session, and then in the Senate chamber.

A large crowd began to gather outside the Capitol perimeter as the Joint Session got underway. Crowd members eventually forced their way through, up, and over Capitol Police barricades and advanced to the building's exterior façade. Capitol Police officers attempted to maintain order and stop the crowd from entering the Capitol building, to which the doors and windows were locked or otherwise secured. Nonetheless, shortly after 2:00 p.m., crowd members forced entry into the Capitol building by breaking windows, ramming open doors, and assaulting Capitol Police officers. Other crowd members encouraged and otherwise assisted the forced entry. The crowd was not lawfully authorized to enter or remain inside the Capitol, and no crowd member submitted to security screenings or weapons checks by Capitol Police or other security officials.

Shortly thereafter, at approximately 2:20 p.m., members of the House and Senate (including Vice President Pence)—who had withdrawn to separate chambers to resolve an objection—were evacuated from their respective chambers. The Joint Session and the entire official proceeding of the Congress was halted while Capitol Police and other law-enforcement officers worked to restore order and clear the Capitol of the unlawful occupants.

Later that night, law enforcement regained control of the Capitol. At approximately 8:00 p.m., the Joint Session reconvened, presided over by Vice President Pence, who had remained hidden within the Capitol building throughout these events.

In the course of these events, approximately 81 members of the Capitol Police and 58 members of the Metropolitan Police Department were assaulted, and one Capitol Police officer died. Additionally, four citizens died; many media members were assaulted and had cameras and other news-gathering equipment destroyed; and the Capitol suffered millions of dollars in damage—including broken windows and doors, graffiti, and residue of various pepper sprays, tear gas, and fire extinguishers deployed both by crowd members who stormed the Capitol and by Capitol Police officers trying to restore order.

### B.  Jorge Aaron Riley Crosses the Country to Publicly Obstruct the Election

Between January 5 and January 8, 2021, the defendant posted over 150 messages, photographs, and videos on his public Facebook account, documenting his thoughts and actions as he stormed the United States Capitol on January 6. On January 5, the defendant posted, "Do you really not get what is going to happen on the 6th? I absolutely am looking forward to that and NO MATTER WHAT THERE IS NOTHING THAT CAN STOP IT!!!!" The next day, after traveling thousands of miles from Sacramento, California to Washington D.C., he posted "Today at noon, the Election is being challenged." On his way to the Capitol, the defendant posted a video with a large number of other individuals and the Capitol in the foreground, stating "There's 100's of thousands of people marching on the Nation's Capitol!!!" About thirty minutes later, he added "Hey We're storming the Capitol…. what are you doing?"

Then the defendant broke into the U.S. Capitol with hundreds of other rioters. In a photograph of himself and others in the Capitol, he wrote, "I'm in the front where do you think I am." In over 100 photographs, the defendant documented where he and others unlawfully entered and rioted around the Capitol. Afterward, he gave a video-recorded interview outside the Capitol, detailing in his own words what he had just done. In relevant part, he explained:

> We breached over there I think.  We broke windows, we went into the door, we pushed our way in, and then we just kept going further and further … we went into, there was like a corridor building…. We pushed our way to Nancy Pelosi's office … and then we were sitting in there yelling 'fuck you Nancy Pelosi'[1]… [I] got pepper sprayed three times, and got fire-extinguishered [*sic*] … When we went into one of the rooms when they were trying to get all the legislators creeping away, one of our guys came in, there was like three of us in a room and everybody else was cops, so they … fire-extinguishered [*sic*] everybody in the room, and that's how the cops got away and we were able to keep going.  It was pretty badass…. When we got up inside, they did come in and they set up this line, and they were like trying to push us out of the room. For a long time there was like a hella long power struggle, and we were pushing back and forth on each other, and we were being crushed and people were being trampled on and shit, and it was horrible.

Despite his self-described physical confrontation with the police, Riley then claimed he and the other rioters did not have problems with the officers and that the officers were nice and not injured after the struggle was over.  Riley concludes, "It was mostly a peaceful, physical takeover of the Capitol. We stopped the steal, because they were in there and they weren't going to stop the steal, so we stopped the steal. We took our country back.  Fuck you guys."

In the days following, Riley continued to post messages and photographs about the events on January 6 to his public Facebook profile. On January 8, for example, he posted in response to another message, "We came to take our country back!!" In another post on the same day, Riley messaged, "Don't leave the GOP I just did what I did so I could say TAKE IT OVER." Finally, in an additional post on January 8, he stated, "I won't say I did nothing while communism over ran my country. I won't say I stood by. Come take my life. I'm right here"—after which, Riley posted his address in Sacramento, California. Shortly thereafter, Riley posted "You will all die."

## II.   **Procedural Background**

On January 18, 2021, Riley was charged by Complaint with obstructing an official proceeding, in violation of 18 U.S.C. § 1512(c)(2) (a felony); entering a restricted building without

---

[1] At this point, Riley flashes both of his middle fingers to the screen as if to reenact what he had done while yelling in the Capitol.

lawful authority, in violation of 18 U.S.C. § 1752(a) (a misdemeanor); and, violent entry on Capitol grounds, in violation of 40 U.S.C. § 5104(e)(2) (a misdemeanor). He made his initial appearance in the Eastern District of California on January 20, and the government moved for detention. On January 25, Riley argued to the Court that it had no legal authority to detain him in light of the charges and filed a briefing to that effect. The government filed its response the next day, arguing that the Court had authority to hold a detention hearing under 18 U.S.C. § 3142(f)(2). The Court agreed with the government and held a detention hearing on January 27. At that hearing, the Court considered the defendant's conduct, the weight of the evidence, and his participation in criminal conduct while on release pending trial, among other factors. Ultimately, the Court held Riley pending a detention hearing in Washington, D.C.[2]

On February 3, 2021, a federal grand jury in Washington, D.C., indicted Riley on counts of obstructing an official proceeding, in violation of 18 U.S.C. § 1512(c)(2) (a felony); entering a restricted building without lawful authority, in violation of 18 U.S.C. § 1752(a) (a misdemeanor); and, violent entry on Capitol grounds, in violation of 40 U.S.C. § 5104(e)(2) (a misdemeanor).

## ARGUMENT

The government submits that it has met its burden of persuasion that pretrial detention is warranted, and that the United States Magistrate Judge in the Eastern District of California got it right. The Court must consider four factors in making this determination: (1) the nature and circumstances of the offense charged, including whether, for example, the offense is a crime of violence; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community

---

[2] Per the Court's Order dated February 7, 2021, the government has attached as Attachment 1 the transcript of the detention hearing that took place in the Eastern District of California on January 27, 2021.

that would be posed by the defendant's release. 18 U.S.C. § 3142(g). A judicial officer's finding of dangerousness must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(b); *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). When "risk of flight" is the basis for detention, however, the government must only satisfy a preponderance of the evidence standard. *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996). An analysis of these four factors heavily weighs in favor of Riley's continued detention given the clear and convincing evidence that his release presents a particular danger to the community as well as the preponderance of evidence that he poses a serious risk of flight.

## I.      The Nature and Circumstance of the Offense Was Dangerous and Serious

January 6 was a day hundreds of rioters breached the U.S. Capitol, millions of dollars of damage was done to our seat of government, the certification of a presidential election was delayed, and human beings lost their lives. According to Riley, nothing could stop what was coming. As if to prove that, he traveled over three thousand miles to help halt the peaceful transition of power. He contributed to the mob of anger and destruction that overran law enforcement by sheer numbers and halted the certification of the presidential election, and he did so premeditatedly. Far from someone who got caught in the moment, Riley planned and helped create the moment, and the magnitude of that moment only galvanized him as he posted videos of other rioters and bragged that they were all storming the Capitol grounds. To be sure, Riley would not be outdone by other violent rioters: he made clear that he was in the front as they violently and unlawfully entered the Capitol Building itself.

According to Riley, while inside, he marched around wreaking havoc wherever he went. Trying to find and harass United States Speaker of the House Nancy Pelosi at her office and engaging in a "power struggle" with law enforcement officers, as Riley put it, was all part of a

"mostly peaceful, physical takeover of the Capitol." Prior to January 6, Riley announced that nothing could stop what was about to happen, and he apparently meant it: as Riley puts it, neither pepper spray nor fire-extinguisher retardant slowed him from accomplishing his publicly-announced goal of "stop[ing] the steal" and taking "our country back." The defendant's deeply-held beliefs motivated him to travel across the country to halt an election he viewed as rigged, and in the process he ripped at the fabric of our democratic society.

## II.     The Weight of Evidence Against Riley is Strong

Second, the weight of the evidence against Riley is immense: Riley's own 150 or more photographs, videos, and messages documenting his actions before, during, and after January 6; other videos from inside the Capitol that show him in various parts of the building; discovered clothing, electronic evidence, and travel records pursuant to a lawfully-executed warrant at his residence; and his own statements immediately after storming the Capitol, in which he details what he had just done. Put simply, the defendant's inability to hide from the weight of this evidence creates the acute risk that he will attempt to hide from this Court.

## III.     History and Characteristics of Riley

Pursuant to 18 U.S.C. § 3142(g)(3), the Court shall consider a number of characteristics of the defendant in determining whether to detain them pending trial, to include the person's criminal history and whether at the time of the current offense the person was on release pending trial. Here, the defendant has a history of arrests for domestic violence against previous relationships that ultimately resulted in no prosecution.  Critically, he is currently pending trial in Sacramento California, where he is charged with felony child abuse against his son. Specifically, he is alleged to have choked and beaten his child in public causing a number of visible marks and resulting in his son briefly losing consciousness. Apart from allegedly presenting a serious danger to even his

own family members, Riley has most recently proven he is willing to travel thousands of miles to commit federal offenses in other jurisdictions while on release pending trial. His conduct belies any notion that there are a set of conditions that can reasonably assure that Riley will follow this Court's orders any better than his home state's court.

## IV.     Danger to the Community and Risk of Flight Posed by Riley's Release

It is difficult to fathom a more serious danger to the community—to the District of Columbia, to the country, or to the fabric of American Democracy—than the one posed by someone who joined other insurrectionists to occupy the United States Capitol and publicly flaunted his obstructive behavior. Every person who was present without authority in the Capitol on January 6 contributed to the chaos of that day and the danger posed to law enforcement, the United States Vice President, Members of Congress, and the peaceful transfer of power. The defendant's specific conduct helped energize that chaos and danger. Make no mistake: the fear the defendant helped spread on January 6 persists. No combination of conditions could reasonably assure the safety of the community and Riley's compliance with Court orders.

Moreover, Riley made clear that he would not stand silently by while those he viewed as socialists took over his country. Since January 6, a new administration has taken office despite Riley's best efforts to the contrary—a transition he viewed as an existential threat. There is no reason to believe those sentiments have abated, and he should be held pending trial.

## **CONCLUSION**

For the foregoing reasons, the government thus requests that the Court deny the defendant's

appeal of detention and detain Jorge Aaron Riley pending trial.

Respectfully submitted,

MICHAEL R. SHERWIN
ACTING UNITED STATES ATTORNEY

By:    _____

TROY A. EDWARDS, JR.
Assistant United States Attorney
N.Y. Bar No. 5453741
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530
Email: troy.edwards@usdoj.gov
Phone: 202-252-7081

Dated:         February 11, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2021, I sent a copy of the foregoing to the Court's electronic filing system.

_____
TROY A. EDWARDS, JR.
Assistant United States Attorney