1          IN THE UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF CALIFORNIA

2

3     United States of America,
              Plaintiff,

4
      vs.                              Sacramento, California
5                                      No. 2:21-mj-00013
      Jorge A. Riley,                  Wed., Jan. 27, 2021
6          Defendant.                  2:36 p.m.
      _____/

7
                      TRANSCRIPT OF HEARING VIA ZOOM
8        BEFORE THE HONORABLE CAROLYN K. DELANEY, MAGISTRATE JUDGE
                           ---oOo---

9

10   APPEARANCES:

11     For the Plaintiff:            United States Attorney
                                     501 I Street, Suite 10-100
12                                   Sacramento, California  95814
                                     By:  Heiko P. Coppola
13                                   Assistant U.S. Attorney

14

15     For the Defendant:           Office of the Federal
                                     Defender
16                                   801 I Street, 3rd Floor
                                     Sacramento, California  95814
                                     By: Timothy Zindel
17                                   Assistant Federal Defender

18

19     Official Court Reporter:     Kimberly M. Bennett,
                                     CSR, RPR, RMR, CRR
20                                   501 I Street
                                     Sacramento, CA 95814

21

22

23

24
       Proceedings recorded by mechanical stenography, transcript
25     produced by computer-aided transcription

1          (Court called to order, 2:36 p.m.)

2               THE CLERK:  Calling magistrate case 21-13; United

3     States versus Jorge A. Riley; on for detention hearing.

4               THE COURT:  All right.  Mr. Coppola, are you here on

5     behalf of the United States?

6               MR. COPPOLA:  I am, Your Honor.  Good afternoon.

7     Heiko Coppola on behalf of the United States.  And we consent

8     to proceeding by Zoom this afternoon.

9               THE COURT:  Thank you.

10        And Mr. Zindel, you're here on behalf of Mr. Riley?

11              MR. ZINDEL:  I am, Your Honor.  May I have just a

12    moment, Your Honor?  Sorry.  I'll be right there.

13        (Pause in proceedings.)

14        I'm sorry, Your Honor.

15              THE COURT:  Okay.  Mr. Zindel, do you and your client

16    consent to proceeding by Zoom today?

17              MR. ZINDEL:  Yes, we do, Your Honor.

18              THE COURT:  All right.  Thank you.

19        And Mr. Riley, if you can just give me a thumbs up if you

20    can see and hear us okay.

21              THE DEFENDANT:  (Gesturing.)

22              THE COURT:  All right.  I see a thumbs up.

23        All right.  I've reviewed both Mr. Zindel's briefing and

24    the government's opposition to Mr. Zindel's briefing, and I've

25    had a chance to review it and do my own research.

1       Mr. Zindel, I understand your argument, I just think you're

2   wrong.  So, if you want to elaborate at all, I'm happy to hear

3   it, but I think that not only do I have the power I have the

4   obligation to determine detention or release even if the charge

5   does not fall into one of the categories in (f)(1), as this one

6   does not.

7           MR. ZINDEL:  Well, Your Honor, I think, as I said in

8   my motion, it has to either fall under (f)(1) or (f)(2).  When

9   the government made its motion the other day, it did not give

10  any reason falling under (f)(1) or (f)(2).  It now says that

11  the basis for which it seeks detention is serious risk of

12  flight or serious risk of obstruction under (f)(1) and (f)(2).

13      And, yes, I believe the Court does have the authority under

14  (f)(1) and (f)(2) to hold a hearing in a case where there is

15  evidence of a serious risk of personal fleeing or a serious

16  risk the person will obstruct or attempt to obstruct justice.

17  I just didn't -- I don't see that evidence in this case.  And I

18  had made that point on -- at the hearing on Monday, and the

19  government has now addressed it.  But I continue to believe

20  that they have not made out a case for serious risk of flight

21  or a serious risk of obstruction.  And those are the -- that's

22  the basis upon which they're moving.

23          THE COURT:  All right.  So it's clear, then, that

24  under (f)(2) I have the authority on either my motion or the

25  government's motion.  And now that we've unscrambled this a

1   little bit, it's clear that both the government is moving for

2   that and I am relying on that.

3       When we talked on Monday, your position was that Mr. Riley

4   was not accused of any violent acts.  Having reread the

5   probable cause statement filed by the FBI agent in this matter,

6   I don't agree with your characterization of what violence

7   includes.  And his statements, which included that he was

8   involved in storming the Capitol, there is one statement he

9   posted online about -- I don't want to get the words wrong, but

10  something to the effect of, they will die.  And I want to make

11  sure that I get the words correct, so if you can just stand by

12  a minute while I pull up the affidavit so I'm not misspeaking.

13      So, what he is alleged to have said, according to the

14  criminal complaint, included, on January 8th, so after the

15  event, he was making some comments about that he couldn't say

16  or wouldn't say that he did nothing during this situation.  And

17  he posted his address in Sacramento, California.  And according

18  to the affidavit, shortly thereafter, Riley posted, quote, you

19  will all die.  So, the picture that's being drawn for me is a

20  man who was willing to leave the area, travel an extensive

21  distance to be caught up in this situation, and I don't agree

22  with your characterization that he simply was at a peaceful

23  protest making his views known.  That's not what his post

24  showed.

25      So, it is true, as far as I can tell from the affidavit,

1  that there is no evidence that he physically assaulted anyone

2  personally, but he does take credit for the damage of property

3  and the shoving match with the Capitol police officers, or

4  whoever was there by that point, by using the term "we" in his

5  postings.  So while I don't see him saying, I did this, what he

6  said was, we did this, which to me implies that he was a

7  knowing and willful participant in the actions that happened

8  that day.  And all of that says to me that he is a risk both of

9  flight, in that he was willing to go a long distance to be

10  involved in this, and now that he's facing serious

11  consequences, I'm concerned that he would not appear if I

12  released him, and that he is a man of impulse and poor

13  judgment, as Mr. Coppola and the government argued on Monday.

14      So my intention is to detain him, but I don't want to

15  preclude you from giving any last thoughts, just in case you

16  can change my mind.  But I'm -- having pondered it for two

17  days, reviewed the briefing, re- and re-reviewed the affidavit,

18  it seems to me detention is appropriate for Mr. Riley.

19          MR. ZINDEL:  Well, Your Honor, my computer is frozen

20  up, so I'm going to have to do this based on my memory, but let

21  me speak to you directly.

22      For you to be able to order him detained, first you have to

23  find that there -- that he presents a serious risk of flight.

24  And what that means is that there is a serious risk that he

25  will flee the jurisdiction of the court, that he will not show

1    up for court.

2        That evidence before -- this is what the government says

3    about this serious risk of flight:  First, they say the crimes

4    did not occur here.  Well, that's true of every Rule 5 that

5    we've ever had in this court.  And, yes, it does appear from

6    the evidence before the Court that he flew across the country,

7    but he flew across the country with thousands of other

8    Americans who wanted to -- who were upset by the results of the

9    election and were called to a rally by the President of the

10   United States.  This was a thing that happened.  It was a

11   unique event in our history.  The person who -- for whom it was

12   done, the person who egged it on and encouraged it, is no

13   longer in power and does not have a voice, so that is not

14   likely to recur.  But even so, flying across the country to go

15   to a rally does not indicate that going forward Mr. Riley, now

16   that he's before the Court, will not show up for court and will

17   not take care of the business that he's required to take care

18   of.

19       The other --

20            THE COURT:  Mr. Zindel, if I can just interrupt you

21   for a moment on that point.  If you could address yourself to

22   the prior failures to appear that are referenced --

23            MR. ZINDEL:  I would.

24            THE COURT:  Okay.

25            MR. ZINDEL:  This is why I'm at a bit of a handicap

1    because my computer froze.  And, Your Honor, I know they are

2    labeled as FTAs in the pretrial services report, but that's not

3    what they are.  And even if they were FTAs, failing to appear

4    in a state court matter is not fleeing the jurisdiction, it's

5    not risk of flight.

6        Risk of flight means you've got -- you've got another ID

7    there, you've got money, you've got some way to get out of the

8    country, you've got offshore accounts, you're going to run from

9    the court.

10       Looking at the report, I went through, very carefully,

11   the -- each of the -- the prior court cases that Mr. Riley had.

12   The last FTA is one that's alleged to have occurred in

13   February 2017 in connection with a charge for which he was

14   diverted.  And the record in that case showed that he made ten

15   court appearances between June 1, 2016 and January 18, 2017.

16   There was just one status conference after another.  On

17   February 15, 2017, which is the date of the FTA, it says --

18   that's listed as an FTA, but he was there on March 24th, the

19   warrant was recalled.

20       It often happens in state court, because of the press of

21   business, the business -- we have a busy day here today, in

22   state court it's like that every day.  He may have missed a

23   proceeding, but he was there the next month.  And that case

24   went on and he successfully completed diversion and it was

25   dismissed.  So that is -- that is the most recent FTA that's

1    listed on this report.

2        The others you would have to go back 12 years to when he

3    was charged in 2007 with drunk driving.  There is an allegation

4    that he failed to appear on April 30, 2007.  This would have

5    been his first appearance, and there is no evidence on the

6    docket that he ever had notice that he -- of that appearance or

7    that he was given a court date.  And then he went through and

8    made several appearances and resolved that case.

9        Now, there are FTAs listed for April 21, 2008, and May 5,

10   2008, and they are listed on the docket as failures to appear.

11   But the first one, there is no probation revocation.  The first

12   one -- these are both post-sentencing hearings, and the first

13   one is a notification to the court that he had not -- they did

14   not receive confirmation that he had enrolled in alternative

15   sentencing.  And the second was that he had been dropped from

16   the first offender program.  He then went to court, his

17   probation was reinstated, and eventually he -- he completed it.

18       So he does not have any record of deliberately failing to

19   appear in court.  In his most recent case he's had, I believe,

20   nine court appearances without fail.  He had over a dozen in

21   the preceding case.

22       So the risk of flight means, basically, running.  To run,

23   you've got to have money, you've got to have some resources.

24   And Mr. Riley lives on $750 a month in veterans benefits as a

25   result of his eight years of service in the United States Army.

1    He has no ability to run.  I asked him, out of curiosity, how

2    he was able to get to Washington, D.C., because the evidence

3    certainly indicates that he went there, and he said, Donald

4    Trump sent me $600.  So he cashed his stimulus check to get

5    there and back.  He does not have the money to run.  He does

6    have not those resources.  He doesn't have a vehicle, so he

7    wouldn't be able to run.  He has lifelong ties to Sacramento,

8    which is usually what we use as sufficient evidence that a

9    person is going to appear.

10       This -- this trip to Washington was the only trip

11   out-of-state that he's made since he was discharged from the

12   United States Army in 2003.  His house is here.  He was

13   homeless for several years, but he has this house that he's had

14   for two, two and a half years now, that he occupies.  The rent

15   is very low.  His family is here.  His friends are here.  Some

16   of them are listening on this call at the moment.  He is

17   enrolled in school here and has attended school here for, I

18   think, 20 years.

19       He was arrested at his house.  And I'll tell you what, this

20   was very significant, I asked Mr. Riley, did you know the FBI

21   was going to be coming to get you?  And he said, yes, and he

22   said, I cleaned my house because I didn't want them to think I

23   was a slob, and I went to the extent of putting the toilet seat

24   down because if a female agent came, I didn't want her to think

25   that I was the kind of person who would always leave the toilet

1    seat up.

2        And I confirmed that with his friend Bill Cardoza, that

3    they had spoken the weekend before, that Bill told me,

4    independently of Mr. Riley, yeah, Jorge had cleaned his house

5    because he didn't want the FBI to think he was a slob.  So he

6    knew that they were going to be coming and he didn't run.

7        He's not a flight risk, Your Honor.  They would have -- the

8    government -- that's the government's burden, is to prove that

9    he is -- that he poses a risk of flight.  He posted his

10   address, that's in the complaint, and he said, I'm right here.

11   That's in the complaint.  It was widely publicized throughout

12   the country that the government was looking for people who had

13   gone to the Capitol --

14           THE COURT:  Mr. Zindel, I mean, I -- your points are

15   all well made, and you obviously feel strongly about this, I

16   appreciate your passion for his release, but while he did post

17   his address, he also said, basically, we will all die.  Now,

18   what am I to take from that?

19           MR. ZINDEL:  Well, Your Honor, I don't have the full

20   context of that.  My understanding from him is that that was a

21   response that he made -- because of his postings on Facebook,

22   his account is open, I was able to look at them, he got a lot

23   of threats from people that he believed to be Antifa, and some

24   of them were very vicious, and some of them were very awful.  I

25   believe that it comes from one of those.  It does not have --

1    is not a threat by Mr. Riley.  He is not charged with making

2    threatening communications.  That's certainly a federal offense

3    that the government could have filed against him, it -- when it

4    brought this case.  So that's really just imaginative, and that

5    comment is taken out of context.

6        I should also add that I don't have his phone, he doesn't

7    have access to his telephone, but there are text messages on

8    his telephone that talk about the prospect of him getting

9    arrested.

10        So what I'm saying, Your Honor, is that the -- that for you

11    to be able to order him detained under (f)(2), you would have

12    to find that he presents a serious risk of flight, and the

13    evidence is really overwhelming --

14            THE COURT:  I actually disagree with you on that,

15    Mr. Zindel.  What triggers the detention hearing are -- are the

16    prongs under (f)(2), but the finding I have to make is that he

17    is a risk of nonappearance and/or a risk to the safety of the

18    community.  So, you can't conflate those two things.

19            MR. ZINDEL:  I don't think I am.  I don't think I am.

20            THE COURT:  All right.

21            MR. ZINDEL:  The -- I think that once you've found --

22    for you to be able to hold a detention hearing, you have to

23    find under (2) -- (f)(2) either a serious risk that Mr. Riley

24    will flee or a serious risk that he will obstruct justice.  And

25    then once you've made those findings you can move on to

1    conditions.  And there, under (g), if there is -- you would

2    consider the nature and seriousness of the danger that he poses

3    if you make -- first make that finding.

4        I'm addressing the -- the factual matter of serious risk of

5    flight.  And, again, the only evidence that the government

6    proffers regarding risk of flight is that he -- the crimes did

7    not occur here -- I think I'm quoting from their brief -- that

8    he has the resources to travel, which is not true, and he has

9    the will to travel, which is also not true, and for all of the

10   reasons that I've listed.  He doesn't even have a passport.

11   And I believe I read that after this happened, many of the

12   people who were known to have been at the Capitol were placed

13   on a No Fly List.  So, I don't know how Mr. Riley would be able

14   to leave the jurisdiction with half a motorcycle and no money.

15               THE COURT:  All right.  I understand your

16   arguments --

17               MR. ZINDEL:  All right.

18               THE COURT:  -- and I've certainly thought about all

19   of them.

20       Mr. Coppola, I'll give you the last word.

21               MR. COPPOLA:  Your Honor, unless the Court has any

22   specific questions of me, I don't have too much to add.  I

23   think the Court's -- the Court's already ruled in terms of

24   finding under (f)(2).  And then the -- the affidavit itself,

25   Your Honor, as well as the pretrial services report lay out

1    adequate basis under (g) -- under 3142(g) for the Court to make

2    the required findings for continued detention.

3        So, on that, Your Honor, I'll submit it, unless the Court

4    has -- has any specific questions.

5            THE COURT:  All right.  Thank you, Mr. Coppola.  I

6    don't.

7        Yes, Mr. Zindel?  I can see you shaking your head.

8            MR. ZINDEL:  Yes, I did not -- the government also

9    made the suggestion that (f) -- (f)(2)(B) would also be

10   grounds, which is evidence of a serious risk of obstructing

11   justice.  But here, again, the government does not have any

12   evidence sufficient to show that Mr. Riley presents a serious

13   risk of obstructing justice.  Their only argument in that

14   regard is that he is charged with obstructing official

15   proceedings.  That is not what (f)(2)(B) addresses. (f)(2)(B)

16   --

17           THE COURT:  Yeah, but that's not factual

18   underpinnings of what he did.  The factual underpinnings are

19   what we've already described, which is, yes, he disrupted an

20   official proceeding, allegedly, but the way he did it was by

21   going with thousands of people and tussling with the Capitol

22   Police, breaking windows, and posting about it.

23       So why isn't that a -- show me a risk of obstruction of

24   justice?  If you're not willing to listen to the police

25   officers who are telling you to leave, and not to break

1   windows, then why should I think he's going to obey any of the

2   conditions that I've set or I will set -- would set?

3           MR. ZINDEL:  Well, Your Honor, that was -- I have two

4   things to say.

5      First -- and I don't want to miss this, I want to address

6   your point more directly second.  But first, if you look at

7   subdivision (f), which is the authority to detain, (f)(1) looks

8   backwards; that's the one that looks at what did you do, did

9   you do one of these five categories of crimes that would

10  justify you being detained.  (f)(2) looks forward; what are you

11  going to do if I release you.  Are you going to present a

12  serious risk of flight or a serious risk of obstruction of

13  justice.  And it's not a risk, it's a serious risk.  So, that

14  is the government's burden.  That's looking forward, not what

15  did you do because you -- did you -- you flew to Washington for

16  this protest, does that make Mr. Riley a serious risk going

17  forward of obstructing justice.

18     Now, I have a few points to make about that, but I also

19  think it's very important to bear in mind, you know, most of

20  the -- the people who have been charged in these cases across

21  the country, not all of them, but many of them, including

22  people whose conduct was far more serious than Mr. Riley, are

23  being ordered released because this was -- although it was a

24  mass protest, it was -- it was a unique and unusual event that

25  is not at all likely to recur.  And --

1          THE COURT:  Except, Mr. Zindel, when we're in the

2    corollary situation, when you have a defendant who, you know,

3    has other defendants that have been detained, you say, oh, but

4    my guy is different.  Now that they're being released, you

5    know, you -- you're trying to compare all of them.  And I have

6    no idea what the other circumstances of the other defendants

7    are, nor do I care.

8       (Inaudible/audio interruption) a particularized showing in

9    this case.  And how I can predict the future is only by looking

10   at the past.  How I can predict whether he's a serious risk of

11   flight or likely to obstruct justice, and likely, for that

12   matter, to obey the rules of the Court, is by looking at what

13   he's done.  And what he did in this case, for whatever reason

14   that you want to argue about, it concerns me greatly.

15      My intention is to detain him.  And you will have, or he

16   will have, the right to argue again when he gets to Washington,

17   D.C.  But that's -- that's where we're at.

18          MR. ZINDEL:  I have not finished making my record,

19   Your Honor, and I'd like to finish.

20          THE COURT:  Go ahead.  I will allow you to make your

21   record.

22          MR. ZINDEL:  I guess -- so, I'm going to address this

23   idea that -- this argument that the government made that

24   Mr. Riley presents a serious risk going forward of obstructing

25   justice because he flew to Washington to participate in a mass

1   protest along with thousands of other Americans.  There were

2   thousands of others there, many of them believed that they were

3   called there by the President of the United States to do this.

4       Now, the evidence against Mr. Riley is evidence of his own

5   social media postings, Facebook postings, a recorded interview

6   of him that's linked in the complaint, and selfies.  So there

7   is nothing that he has the ability to obstruct.  When I -- when

8   I read that provision to him, it says there has to be -- the

9   Court has to find a serious risk that a person will obstruct,

10  or attempt to obstruct, justice, or threaten, injure,

11  intimidate, or attempt to threaten, injure, or intimidate, a

12  prospective witnesses or a juror.  A fair reading of the

13  complaint, the only witness against Mr. Riley is Mr. Riley.

14  And when I mentioned that to him, he said to me -- and I think

15  he was right, he said, I promise not to intimidate myself.

16      I think the Court here -- I don't know what it is that is

17  motivating the Court here, but I think if you step back and

18  ask --

19          THE COURT:  Mr. Zindel, what is motivating the Court

20  is following the rule of law.  And when I look at the complaint

21  and match it up with the rule of law, I come to a very

22  different conclusion than you do.  And that's the nature of the

23  job.  Based on what I am seeing, I do not find that Mr. Riley

24  is a good risk for release, and that I am not going to release

25  him.

1       So I think I've given you ample time to make your case.

2   You certainly made it in your papers.  And I understand your

3   argument as it relates to the facts, but --

4           MR. ZINDEL:  Your Honor --

5           THE COURT:  Yes.

6           MR. ZINDEL:  I am going to ask the Court to make

7   specific factual findings in order to show -- in order -- about

8   what evidence you believe proves that Mr. Riley presents a

9   serious risk of flight going forward, and a serious risk of

10  obstruction going forward.

11          THE COURT:  I've explained to you twice now,

12  Mr. Zindel, I do not believe that those are the findings I need

13  to make to detain him.  Those are the -- the move -- the points

14  that the government moves for or the Court finds to have a

15  detention hearing.  We have had that detention hearing.

16      Once there is a detention hearing, then I look to the

17  factors laid out in the statute about what I think Mr. Riley

18  has done or will do when I decide whether or not to detain him.

19      And if I could ask my courtroom deputy, please, to mail

20  me -- e-mail me the form that I will fill out, I will tell you

21  which boxes I intend to check as I fill it out.

22          MR. ZINDEL:  Are you making a finding that Mr. Riley

23  presents a serious risk of flight?

24          THE COURT:  If you can just wait until I get the

25  sheet so I can tell you exactly what the findings are that I'm

1  going to make.

2         THE CLERK:  You want the detention order, ma'am,

3  correct?

4         THE COURT:  Yes.

5         THE CLERK:  I just sent it.

6     (Pause in proceedings.)

7         THE COURT:  All right.  Mr. Zindel, here are the

8  boxes available to me based on the statute:

9     1. Eligibility for detention.  Upon the motion of the

10  government pursuant to, cutting to the chase, 3142(f)(1), or

11  motion of the government or the Court's own motion pursuant to

12  31(f)(2), the Court held a detention hearing and found that

13  detention is warranted.  This order sets forward the Court's

14  findings of fact and conclusions of law, as required by 18 USC

15  3142(i)...

16     By clear and convincing evidence that no condition or

17  combination of conditions of release will reasonably assure the

18  safety of any other person and the community.

19     By a preponderance of the evidence that no condition or

20  combinations of conditions of release will reasonably assure

21  the defendant's appearance as required.

22     The reasons for detention include the following:

23     1. Weight of the evidence against the defendant is strong.

24     2. Subject to lengthy period of incarceration if convicted.

25     3. Criminal -- prior criminal history.

1      4. Participation in criminal activity while on probation,

2   parole, or supervision.

3      5. History of violence or the use of weapons.

4      6. History of alcohol or substance abuse.

5      I do not see that.

6      7. Lack of stable employment.

7      I believe he's lost his job; is that right, Mr. Zindel?

8           MR. ZINDEL:  No.  He's a disabled veteran, Your

9   Honor.  He doesn't have a job.

10           THE COURT:  Okay.  I will not check that box.

11      He has a stable residence.

12      He has people that are willing to step up as financially

13   responsible sureties.

14      He has significant ties to this district.

15      I'm unaware of any ties outside the United States.

16      He has legal status.

17      He is not subject to deportation after serving a period of

18   incarceration.

19      He does have prior failures to appear in this court -- in

20   court as ordered.

21      Prior attempt to evade law enforcement.  I -- you know, I'm

22   not quite sure about that one.  There certainly could be an

23   argument made that his behavior at the Capitol was a prior

24   attempt to evade law enforcement in the pushing match that was

25   described.

1        I don't have any use of aliases or false documents.

2        I don't have any background information that is unknown or

3   unverified.

4        But, I do have prior violations of probation or parole.

5        So I will be checking:  The weight of the evidence is

6   strong; subject to a lengthy period of incarceration; his prior

7   criminal history; his participation in criminal activity while

8   on probation, parole, or supervision; his history of violence;

9   his prior failure to appear at courts; his background -- excuse

10  me, prior violations of probation, parole, or supervised

11  release.

12       I'm also going to add the conduct alleged in the affidavit

13  relating to the comment that we will all die, and that he used

14  the terms, we broke the windows, and, we were engaged in the

15  pushing match with the Capitol Police.  I will quote that

16  directly from the affidavit.

17       So, that's my ruling.  Mr. Riley will be detained on those

18  bases, remanded to custody, and ordered transported forthwith

19  to the District of Washington, D.C., whatever that is.

20       Yes, Mr. Coppola.

21            MR. COPPOLA:  One thing, Your Honor.  He does have --

22  we did not set a preliminary appearance -- or preliminary

23  examination for Mr. Riley.  He has the right to one not only in

24  this district but also in the District of Columbia.  And that

25  would have been -- I believe, 14 days from next Wednesday --

1  from last Wednesday when he appeared would be next Thursday.

2  There we go.

3         THE COURT:  What are you asking me to do,

4  Mr. Coppola?

5         MR. COPPOLA:  I'm just --

6         THE COURT:  I ordered him transported forthwith.

7         MR. COPPOLA:  Yes.  Yes.  But he does -- I don't know

8  that he will necessarily make it to Washington, D.C. within --

9  within the timeframe for his -- his initial, so I'm simply

10  asking the Court to set a preliminary examination in this

11  district for next Thursday.

12         THE COURT:  No.  I'm ordering him transported

13  forthwith.  If they want to have a preliminary hearing in the

14  District of D.C. and he's still here, they can do it by video

15  means.

16         MR. COPPOLA:  Very well, Your Honor.

17         THE COURT:  Anything further, Mr. --

18         MR. ZINDEL:  Your Honor, I should note for the record

19  that Mr. -- it continues to be my position that Mr. Riley does

20  not have a history of failures to appear, certainly not one

21  that would indicate -- he has a long record of appearing in

22  court.  He has no history of committing crimes while under

23  supervision.  And I'm looking at the same record that you're

24  looking at.  So I object to those findings.

25      Regarding the weight of the evidence, the Ninth Circuit has

1  clearly said that that's the least important factor, and that's

2  only to be -- that's only to be considered in determining

3  what -- what conditions should be set, so I don't believe that

4  there is any factual support for the Court's record.  I

5  understand that the Court has ruled.  I object to the finding.

6  I don't believe it's supported by the evidence.

7          THE COURT:  You've made your record, do with it what

8  you will.  That concludes the hearing today.

9          MR. COPPOLA:  Thank you, Your Honor.

10          (Proceedings adjourned, 3:08 p.m.)

11                    ---oOo---

12  I certify that the foregoing is a correct transcript from the

13  record of proceedings in the above-entitled matter.

14

15                    /s/ Kimberly M. Bennett
                       KIMBERLY M. BENNETT
16                     CSR No. 8953, RPR, CRR, RMR

17

18

19

20

21

22

23

24

25