UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

JORGE RILEY,

    Defendant.

Case No. 1:21-CR-00069-APM

**SUPPLEMENTAL BRIEF ADDRESSING ISSUES RAISED
IN THE COURT'S ORDER FILED JANUARY 21, 2025**

1. **Procedural summary.**

On January 20, 2025, the President pardoned persons charged with offenses occurring at the Capitol on January 6, 2021. Mr. Riley was among those pardoned. At the time, the Court had yet to rule on Mr. Riley's motion under 28 U.S.C. § 2255 filed on July 8, 2024. Doc. 71. The motion sought to vacate Mr. Riley's conviction of violating 18 U.S.C. § 1512(c)(2) in light of *Fischer v. United States,* 144 S. Ct. 2176 (2024). Mr. Riley argued that he was innocent of violating section 1512(c)(2) as the Supreme Court had interpreted it in *Fischer.* The government responded to the motion on September 12 and Mr. Riley replied on October 29, 2024. Docs. 78, 80. Mr. Riley filed a supplemental brief on November 7, 2024, noting that another judge of this Court had granted a nearly identical 2255 motion filed by two other defendants who had also been convicted of violating section 1512(c)(2). Doc. 83.

The day after the new President pardoned the January 6 defendants, the government moved to dismiss this case under Federal Rule of Criminal Procedure 48(a), citing the Executive Order granting pardons. Doc. 84. On January 22, 2025, the Court issued an order deferring a ruling on the government's motion and raising several questions about how to proceed. The parties agreed to brief the questions raised by the Court in its January 22 order. Doc. 86. This supplemental brief addresses the questions raised by the Court.

2. **The Court Has Jurisdiction to Grant Mr. Riley's Motion Under Section 2255, and It Should Do So Notwithstanding the Pardon, Because Mr. Riley Was Innocent of Violating Section 15123(c)(2).**

The Court asked whether it has subject matter jurisdiction once a defendant is pardoned, assuming the defendant is no long "in custody" under 28 U.S.C. § 2255(a). The Court cited language from *Qassim v. Bush*, 466 F.3d 1073, 1078 (D.C. Cir. 2006): "[F]or a court to exercise habeas jurisdiction over a petitioner no longer in custody, the petitioner must demonstrate that he was in custody at the time he filed the petition *and* that his subsequent release has not rendered the petition moot, i.e., that he continues to present a case or controversy under Article III, § 2 of the Constitution." This language appears in a section of *Qassim* interpreting Federal Rule of Appellate Procedure 23(b), which is not at issue here.

The language in *Qassim* is a quotation from a Fifth Circuit case, *Zalawadia v. Ashcroft*, 371 F.3d 292, 297 (5th Cir. 2004). In *Zalawadia*, the government argued that a habeas petitioner's deportation rendered his petition moot because he was no longer "in custody." The Court rejected the government's argument. First, "[t]he Supreme Court has made it clear that the 'in custody' determination is made at the time the habeas petition is filed." *Id*., citing, *inter alia, Spencer v. Kemna*, 523 U.S. 1 (1998). Second, the argument "conflates habeas' 'in custody'

2

requirement with the requirement that a petition not be moot." *Id.* "As the Supreme Court explained in *Spencer,* for a court to exercise habeas jurisdiction over a petitioner no longer in custody, the petitioner must demonstrate that he was in custody at the time he filed the petition *and* that his subsequent release has not rendered the petition moot, i.e., that he continues to present a case or controversy . . . ." *Id.* "The petitioner presents an Article III controversy when he demonstrates 'some concrete and continuing injury other than the now-ended incarceration' – a 'collateral consequence of the conviction.'" *Id.* In *Zalawadia*, "[his] deportation bars him from seeking reentry into the United States for a period of five years." *Id.* at 299. "This penalty constitutes a cognizable collateral consequence; as such, his petition presents a live case or controversy and is not moot." *Id.* The Court therefore held that it had habeas jurisdiction. *Id.*

Mr. Riley filed his 2255 motion while he was in custody at USP Lompoc serving the sentence imposed by this Court. *See* doc. 72. Because Mr. Riley was in custody when he moved to vacate his conviction, the sole question the Court must decide is whether his release and subsequent pardon render his petition "moot, i.e., that he continues to present a case or controversy under Article III, § 2 of the Constitution." *Qassim*, 446 F.3d at 1078. The answer is Yes, his case presents an Article III case or controversy despite the pardon.

It does not take much to constitute a live case or controversy. "[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Knox v. SEIU, Local 1000*, 567 U.S. 298, 307-308 (2012). The District of Columbia Circuit recognized in *United States v. Flores*, 995 F.3d 214, 225 (D.C. Cir. 2021) that the special assessment a convicted person is required to pay is a "punishment" that flows from the conviction. Here, Mr. Riley's conviction required him to pay a $100 special assessment as well as $2000 in restitution, both of which he paid. Doc. 67 at 6. Vacating his conviction entitles him

to the return of money he paid as a result of pleading guilty to a crime of which he was factually innocent.  As the Court noted in *Flores*, "the[se] modest sums nonetheless constitute punishments.'"  995 F.3d at 225, citing *Rutledge v. United States*, 517 U.S. 292, 301 (1996).

In *Dhinsa v. Krueger*, 917 F.3d 70, 78 (2d Cir. 2019), the Court also held "that Dhinsa has established Article III standing based on a redressable injury-in-fact:  the $100 special assessment that attaches to each of his two challenged convictions."  The Court explained that Dhinsa could not have filed his petition based solely on the assessments.  "Here, however, Dhinsa does not challenge the special assessments themselves.  Rather, he challenges the two underlying convictions" themselves.  *Id.* at 80.  Because he was "in custody in relation to the claims" when he filed his petition, the Court had jurisdiction under *Spencer,* which held that "the 'custody' requirement must be satisfied only at the time the petition is filed.'"  *Id.*

The District of Columbia Circuit recognized in *Flores* that collateral consequences alone can establish the Article III controversy necessary to establish that the Court still has jurisdiction to rule on a 2255 motion properly filed when defendant was in custody.  "Furthermore, the erroneous convictions also affect Flores' substantial rights because they have 'potential adverse collateral consequences that may not be ignored.'"  995 F.3d at 225, quoting *Ball v. United States*, 470 U.S. 856, 865 (1985).  *Flores* noted three significant collateral consequences, two of which are present here.  First, "Flores would continue to have two very serious convictions on his record . . . , which would affect his criminal history category and thus his sentence if he is convicted of any future offenses."  *Id.*  The same is true of Mr. Riley:  although he has been pardoned, the sentencing guidelines provide that "[s]entences resulting from [pardoned] convictions are to be counted in determining criminal history."  U.S.S.G. § 4A1.2, app. n. 10.

4

Second, as in *Flores* "a judge may consider his criminal history when deciding to grant bail pending trial, which would affect his liberty." 995 F.3d at 225.

More important to Mr. Riley, vacating the conviction affords him the right to say that he has not been validly convicted of a felony offense, notwithstanding the pardon. This is an important status to Mr. Riley, a disabled military veteran who has no felony record, and who has studied professions such as accounting, where a felony conviction may bar him from obtaining a license. The pardon alone does not clear his name. *See Nixon v. United States*, 506 U.S. 224, 232 (1993)("the granting of a pardon is in no sense an overturning of a judgment of conviction"). Indeed, no party to this litigation has an interest in maintaining Mr. Riley's conviction of a crime of which, in the light of *Fischer*, he did not commit. The government's filing of a Rule 48 motion to dismiss shows that it has no interest in survival of the conviction, in light of the executive order pardoning the January 6 defendants. The fact of his innocence is discussed in greater detail in his reply brief filed October 29, doc. 80, and in the supplemental authority he filed on November 7, 2024, doc. 83.

Mr. Riley filed his motion when he was "in custody" His case presents a live Article III controversy based on his payment of financial penalties attached to conviction for a crime of which he was actually innocent and on the collateral consequences that flow from that conviction. Accordingly, he asks the Court to grant his motion under 2255 and vacate his conviction of violating 18 U.S.C. § 1512(c)(2).

3. **Coram Nobis Relief Is Also Available to Vacate the Conviction.**

In its order filed January 22, the Court wrote, "If the parties agree that vacating Defendant's conviction is appropriate, there remains an avenue for possible relief: a writ of coram nobis." As the Court noted, coram nobis is a method of collateral attack available to one

5

who cannot seek relief under section 2255 because he is no longer "in custody." *United States v. Newman*, 805 F.3d 1143, 1146 (D.C. Cir. 2015). As the Court also noted, coram nobis relief should be granted only in "extraordinary cases" where it is necessary "to achieve justice." *United States v. Denedo*, 556 U.S. 904, 911 (2009).

Mr. Riley was in custody when he filed his 2255, and the consequences of his conviction present a live Article III controversy, as noted in the preceding section of this brief. However, if he had filed his motion after his imprisonment and supervised relief had ended, he would nevertheless be entitled to coram nobis relief to remedy the injustice of being convicted of a crime he did not commit.

Being convicted of a crime one did not commit is the consummate injustice. In *United States v. Peter*, 310 F.3d 709 (11th Cir. 2002), the Court granted coram nobis relief where an intervening change of the law made clear that defendant's conduct did not violate the statute. In *Peter*, the Supreme Court had decided *Cleveland v. United States*, 531 U.S. 12 (2000), roughly six months after defendant finished serving his term of supervised release. *Cleveland* "held that the offense of mail fraud, as defined by 18 U.S.C. § 1341, requires that the object of the fraud be 'property in the hands of the victim'" and that "[s]tate and municipal licenses in general . . . .do not rank as 'property,' for purposes of § 1341, in the hands of the official licensor.'" 531 U.S. at 15. Because the misrepresentations Peter had made "were made solely for the purpose of obtaining alcoholic beverage licenses . . . , the facts to which Peter pled guilty did not constitute a crime under *Cleveland*. Decisions of the Supreme Court construing substantive federal criminal statutes must be given retroactive effect." 310 F.3d at 711. The Court of Appeals held that Peter was entitled to coram nobis relief because he was charged with committing a crime in

a form that did not constitute an offense: "a writ of coram nobis must issue to correct the judgment that the court never had power to enter." 310 F.3d at 716.

Mr. Riley's indictment charged him with "corruptly obstruct[ing] . . . . an official proceeding . . . by entering and remaining in the United States Capitol." Doc. 11. It did not charge him with "impairing the availability or integrity for use in an official proceeding of records, documents, objects, or . . . other things," an element of the section 1512(c)(2) offense under *Fischer*. Accordingly, if the Court should find that it cannot grant relief under 28 U.S.C. § 2255, then it should grant coram nobis relief to remedy the injustice of Mr. Riley having been convicted of a crime he did not commit.

4. **Regarding Jurisdiction to Rule on the Government's Rule 48 Motion.**

The Court invited the government to "explain how Rule 48 applies" when a defendant's conviction is final – that is, whether Rule 48 can be used to vacate a final conviction. Although the Court in *United States v. Smith*, 467 F.3d 785, 789 (D.C. Cir. 2006), expressed doubt whether Rule 48 alone could be used to dismiss a final conviction, the Court here need not decide whether to grant the government's motion. Instead, the Court should deem the motion to be a concession by the government that the Court should grant Mr. Riley's motion to vacate his conviction under section 2255. Vacating the conviction recognizes that the conviction rested on an overbroad interpretation of section 1512(c)(2).

                                                                        Respectfully submitted,

February 22, 2025                            */s/ Tim Zindel*

                                                                       TIMOTHY ZINDEL
                                                                       Attorney for Jorge Riley